IN RE INTEREST OF ANDREW M., JR., AND MARCELENO M., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. ANDREW M., SR., APPELLANT.
622 N.W.2d 697

Filed February 13, 2001. No. A-00-605.

Dennis R. Keefe, Lancaster County Public Defender, and Margene M. Timm for appellant.

Gary E. Lacey, Lancaster County Attorney, and Rodney D. Reuter for appellee.

SIEVERS, INBODY, and MOORE, Judges.

INBODY, Judge.

## INTRODUCTION

Andrew M., Sr. (Andrew), the natural father of Andrew M., Jr., and Marceleno M., appeals the adjudication of the minor children and the termination of his parental rights. He claims that his due process rights were violated by the admission of evidence which was more recent than the time period alleged in the motion to terminate parental rights and that the juvenile court erred in adjudicating the children pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998) and in terminating his parental rights pursuant to Neb. Rev. Stat. § 43-292(1) (Reissue 1998).

## STATEMENT OF FACTS

On November 18, 1998, an adjudication petition and petition for termination of parental rights was filed. The adjudication petition alleged that the children were juveniles within the meaning of § 43-247(3)(a) because said children lacked proper parental care by reason of the fault or habits of Andrew, in that Andrew did not have contact with the children since 1997 and failed to provide said children with physical or emotional support since that time. The petition for termination of parental rights sought termination pursuant to § 43-292(1) and specifically alleged that Andrew had abandoned the children for 6 months or more immediately prior to the filing of the termination petition and that termination was in the children's best interests.

The combination adjudication and termination hearing was held on January 28 and 31 and February 1, 2000. Evidence adduced at the hearing established that Andrew was the children's noncustodial parent, that he was obligated to pay $50 per month in child support for the two children, and that since at least October 1997, he has resided in Washington State. The evidence further established that Andrew paid child support of $600 per year in both 1997 and 1998. From January 1 to June 1, 1999, he paid $300 in child support, and on June 1, he was $606.60 in arrears on his child support obligation.

Erik Lipins, a caseworker for the Department of Health and Human Services, was assigned to the case from March 1997 to October 1998. Lipins testified that he became aware of Andrew's Washington address in October 1997 and that he sent Andrew a copy of an October 27, 1997, court report. On October 31, Andrew left a message identifying himself as the children's father and gave a telephone number where he could be reached. On November 17, Lipins received a letter from Andrew indicating that he wanted "to exercise [his] legal rights as the biological parent." Andrew reiterated his desire for custody of the children on several occasions, including telephone conversations with Lipins on December 5, 1997, and April 26, 1998, and through counsel at an April 14, 1998, court hearing.

Lipins further testified that Andrew was in Lincoln, Nebraska, from December 5 through 17, 1997. During that 13-day time period, Andrew had a visit with his children.

Thereafter, in late 1997 or early 1998, Lipins testified that a home study was conducted of Andrew's Washington home for the purpose of determining if Andrew's home was appropriate for the children to visit. Based upon the results of that home study, Lipins testified that he determined that Andrew did not have a residence that was appropriate for the children. Lipins testified that from December 17, 1997, to October 1998, there was no further contact between Andrew and the children. Charlie Bennett, another Department of Health and Human Services worker, testified that Andrew did not have any contact with the children from May 1 to November 18, 1998.

The children's foster mother testified that in March or April 1999, Andrew telephoned the children and spoke to them for 2 to 3 minutes total and that the conversation centered around Andrew's asking the children what they wanted for their birthdays. The children later received a birthday card, some cookies, and $10 each from Andrew. The foster mother testified that the next contact between Andrew and the children occurred when Andrew telephoned the children 4 or 5 days prior to Christmas 1999. This conversation lasted 5 to 7 minutes and consisted of Andrew's asking the children what they wanted for Christmas. According to the foster mother, Andrew did send Christmas gifts to the children, which arrived the second week of January 2000, and Andrew telephoned the children to make sure that they had received the presents. This conversation lasted 2 to 3 minutes and was the last contact that the children have had with Andrew, despite the fact that the foster mother informed Andrew that he could telephone the children at any time.

Kathleen England, a psychotherapist who had counseled the children since January 1997, testified that the children need permanence, stability, predictability, routine, and knowledge that their caretakers will provide for them in the long term. Based upon the children's needs and Andrew's lack of regular contact with the children, England opined that termination of Andrew's parental rights was in the children's best interests.

On May 16, 2000, the juvenile court found that the State had proved by a preponderance of the evidence that the children lacked proper parental care by the reason of the fault or habits of Andrew in that Andrew did not have contact with the minor

children during the time period from December 1997 up until November 18, 1998, and failed to provide said children with emotional support during that timeframe. Further, the juvenile court found that the State had proved by clear and convincing evidence that Andrew had abandoned the children for 6 months or more immediately prior to the filing of the termination petition and that termination was proper pursuant to § 43-292(1). The court further found that it was in the children's best interests to terminate the parental rights of Andrew. Andrew has timely appealed to this court. The natural mother's parental rights have also been terminated, but she did not appeal that determination, and her rights are not at issue in this appeal.

## ASSIGNMENTS OF ERROR

Andrew claims that (1) the juvenile court erred in adjudicating the children, (2) his due process rights were violated by the admission of evidence which was more recent than the time period alleged in the motion to terminate parental rights, and (3) the juvenile court erred in terminating his parental rights.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Sarah K.*, 258 Neb. 52, 601 N.W.2d 780 (1999); *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998).

## ANALYSIS

*Adjudication.*

Andrew's first assignment of error is that the juvenile court erred in finding that evidence was sufficient to support its finding that the children were children within the meaning of § 43-247(3)(a).

The relevant portion of § 43-247 applicable to this case provides as follows: "The juvenile court in each county as herein provided shall have jurisdiction of . . . (3) Any juvenile (a) . . .

who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian." The quantitative proof required for an adjudication based on § 43-247(3)(a) is "a preponderance of the evidence." See Neb. Rev. Stat. § 43-279.01(3) (Reissue 1998).

In the instant case, the evidence established that Andrew had no contact with the children from January 1998 to November 18, 1998, which was the date the adjudication petition and petition for termination of parental rights was filed. There was no explanation for Andrew's lack of contact with the children other than a lack of proper parental care. Based on the evidence presented, we find that the State did prove by a preponderance of the evidence that the children were children within the meaning of § 43-247(3)(a). Consequently, this assignment of error is without merit.

*Alleged Due Process Violation.*

Andrew's second assignment of error is that his due process rights were violated by the admission of evidence which was more recent than the time period alleged in the motion to terminate parental rights. More specifically, Andrew contends that although the November 18, 1998, petition for termination of parental rights alleged that he had abandoned the children "for six months or more immediately prior to the filing of the petition," the juvenile court allowed the State to present evidence of Andrew's lack of contact with his children, the caseworker, and the foster parent for the time period after the date of the filing of the termination petition up to the date of the termination hearing.

Notwithstanding that the Nebraska rules of evidence do not apply in dispositional hearings arising under the Nebraska Juvenile Code, the requirements of due process control in determining the type of evidence which may be used by the State in an attempt to prove that parental rights should be terminated. *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999); *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998).

" ' " '[F]undamental due process is difficult to define. With reference to the evidence that is to be considered in a parental rights termination case, it is . . . obvious that in

determining whether or not fundamental due process has been afforded to all persons interested in the proceedings, the Nebraska Rules of Evidence provide a guidepost in that determination.' " ' "

*In re Interest of Tabitha J.*, 5 Neb. App. 609, 613, 561 N.W.2d 252, 257 (1997) (quoting *In re Interest of Theodore W.*, 4 Neb. App. 428, 545 N.W.2d 119 (1996)).

In the instant case, the sole ground for termination was under § 43-292(1), that is, "[t]he parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition." Thus, under § 43-292(1), evidence of the parent's activity toward the child after the filing of the motion could not be relevant on the issue of abandonment. However, even when termination is being sought on the ground of abandonment, one of the necessary elements for termination is that the termination be in the best interests of the child. Thus, the question becomes whether evidence regarding a natural parent's actions or inactions between the filing of the motion to terminate parental rights and the termination hearing is relevant to the issue of the best interests of the child.

Relevant evidence has been defined as " 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *In re Interest of McCauley H.*, 3 Neb. App. 474, 482, 529 N.W.2d 77, 83 (1995). There are two components of relevant evidence: materiality and probative value. *Id*. Materiality is defined as the

" ' "relation between the propositions for which the evidence is offered and the issues in the case. . . . What is 'in issue,' that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law. . . ." ' "

*Id*. (citing *State v. Bell*, 242 Neb. 138, 493 N.W.2d 339 (1992)). To be probative, the evidence must tend to establish what it is that is being offered to prove. *In re Interest of McCauley H., supra.*

An issue similar to the one presented in the instant case was addressed by the Louisiana Court of Appeal in *In re R.W.T. Applying for Adoption of J.D.*, 594 So. 2d 1383 (La. App. 1992). In that case, a stepfather sought to adopt his stepson, thereby ter-

minating the natural father's parental rights. Prior to the time the adoption petition was filed, the natural father spent little time with his son and was delinquent on child support payments. At the adoption hearing, the juvenile court admitted into evidence testimony concerning three incidents between the natural father and his son in which contact with the natural father upset the son, including one incident in which the natural father abducted his son, apparently at gunpoint. The juvenile court found such testimony related to the child's best interests and, after hearing all the testimony, granted the stepfather's petition to adopt his stepson, finding the adoption to be in the child's best interests. On appeal, the natural father argued that the juvenile court erred in admitting postpetition evidence. The Court of Appeal of Louisiana found such testimony to be relevant to the "pivotal issue" of the child's best interests and found the testimony to be relevant on the existence of a parent-child relationship. *Id.* at 1389.

■ Since the primary consideration in determining whether to terminate parental rights is the best interests of the child, *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993), a juvenile court should have at its disposal the information necessary to make the determination regarding minor children's best interests regardless of whether the information is in reference to a time period before or after the filing of the termination petition. Therefore, we hold that postpetition evidence in an action to terminate parental rights is admissible for the purpose of allowing the juvenile court to consider the best interests of the child so long as the postpetition evidence is relevant.

As applied to the instant case, the postpetition evidence regarding Andrew's lack of contact with his children, the caseworker, and the foster parent for the time period after the date of the filing of the termination petition up to the date of the termination hearings was relevant to the court's determination of the children's best interests and was admissible. Thus, this assignment of error is without merit.

*Termination of Parental Rights.*

■ Finally, Andrew claims the juvenile court erred in terminating his parental rights. To terminate parental rights, the State must prove, by clear and convincing evidence, that termination

is in the child's best interests and that at least one of the statutory grounds for termination under § 43-292 exists. *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999).

In the instant case, the State proceeded under § 43-292(1), which states that "[t]he parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition." "Abandonment," for the purpose of § 43-292(1), is a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. *In re Interest of Sunshine A. et al., supra*; *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990). The question of abandonment is largely one of intent, to be determined in each case from all the facts and circumstances. *In re Interest of Sunshine A. et al., supra*; *In re Interest of K.M.S.*, 236 Neb. 665, 463 N.W.2d 586 (1990).

Andrew compares his case to the situation in *In re Interest of B.J.M. et al.*, 1 Neb. App. 851, 510 N.W.2d 418 (1993), in which the Nebraska Supreme Court reversed an order terminating a natural father's parental rights. In that case, the court found that the natural father had not abandoned his children for a period of at least 6 months immediately prior to the filing of the petition to terminate parental rights because the natural father's failure to connect with his children during the requisite time period was due to

> a systematically created series of impediments which prevented [the natural father]'s interest in the care and welfare of his children from successfully maturing into an acceptable relationship. During the 6 months immediately preceding the filing of the petition, he was kept at bay, first, by DSS and, then, by court order.

*Id.* at 864, 510 N.W.2d at 426.

However, the facts in the instant case are distinguishable from those in *In re Interest of B.J.M. et al., supra.* In that case, the father was prevented from contact with his children by the then Department of Social Services and court order. In contrast, in the instant case, Andrew was not prevented from contact with his children, yet had no contact with the minor children from

January 1998 to November 18, 1998, despite the fact that he knew that his children were in foster care.

Further, we are not persuaded by Andrew's argument that notwithstanding his voluntary separation from his children, he has not abandoned them because he requested custody of the children, paid a portion of his child support obligation, telephoned the children three times, and sent the children birthday and Christmas gifts. As we have frequently stated, " ' "[a]bandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child." ' " *In re Interest of Sunshine A. et al.*, 258 Neb. at 155, 602 N.W.2d at 458 (quoting *In re Interest of K.M.S., supra*). Parental obligation requires a continuing interest in the child and a genuine effort to maintain communication and association with that child. *In re Interest of Sunshine A. et al., supra*; *In re Interest of E.G.*, 240 Neb. 373, 482 N.W.2d 17 (1992); *In re Interest of K.M.S., supra*. Small tokens of parental affection for a child are an inadequate substitute for parental presence in a child's life. *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999). See *In re Interest of C.A.*, 235 Neb. 893, 457 N.W.2d 822 (1990). Stated another way, the obligation which a parent owes to his or her children is not something which can simply be "phoned in." *In re Interest of Sunshine A. et al., supra*.

Andrew was not prevented from visiting his children in Nebraska, and he could telephone them whenever he wished. The fact that Andrew chose to reside in Washington State and chose to visit the children only once and telephone them only three times was due to his indifference. Andrew has not presented any evidence which would show a continuing interest in the children or a genuine effort to maintain communication and a meaningful relationship with the children.

Finally, there was clear and convincing evidence that the children need permanence, stability, predictability, routine, and knowledge that their caretakers will provide for them in the long term, that Andrew's limited and sporadic contact with the children demonstrated that he could not meet the children's needs, and that the best interests of the children require that Andrew's parental rights be terminated.

## CONCLUSION

Having conducted a de novo review of the evidence in this case, we find that adjudication of the children and termination of Andrew's parental rights was proper. Further, we find the post-petition evidence regarding Andrew's lack of contact with his children, the caseworker, and the foster parent for the time period after the date of the filing of the termination petition up to the date of the termination hearings was relevant to the court's determination of the children's best interests and was admissible.

AFFIRMED.