Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/19/2019 09:06 AM CDT

In re Interest of Robert W., a child
under 18 years of age.
State of Nebraska, appellee,
v. Robert W., appellant.

___ N.W.2d ___

Filed March 12, 2019.    No. A-18-166.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juve-
   nile cases de novo on the record and reaches a conclusion independently
   of the juvenile court's findings.
2. **Appeal and Error.** An appellate court is not obligated to engage in an
   analysis that is not necessary to adjudicate the case and controversy
   before it.
3. **Jurisdiction.** An actual case or controversy is necessary for the exercise
   of judicial power.
4. **Moot Question: Words and Phrases.** A case becomes moot when
   the issues initially presented in the litigation cease to exist, when the
   litigants lack a legally cognizable interest in the outcome of litiga-
   tion, or when the litigants seek to determine a question which does not
   rest upon existing facts or rights, in which the issues presented are no
   longer alive.
5. **Courts: Judgments.** In the absence of an actual case or controversy
   requiring judicial resolution, it is not the function of the courts to render
   a judgment that is merely advisory.
6. **Moot Question.** As a general rule, a moot case is subject to summary
   dismissal.
7. **Moot Question: Appeal and Error.** Under certain circumstances, an
   appellate court may entertain the issues presented by a moot case when
   the claims presented involve a matter of great public interest or when
   other rights or liabilities may be affected by the case's determination.
8. **Moot Question: Words and Phrases.** In determining whether the
   public interest exception should be invoked, the court considers the
   public or private nature of the question presented, the desirability of an

- 12 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.

9. **Minors: Proof.** The exhaustion requirement of Neb. Rev. Stat. § 43-251.01(7)(a) (Reissue 2016) demands evidence establishing that no other community-based resources have a reasonable possibility for success or that all options for community-based services have been thoroughly considered and none are feasible.

Appeal from the Separate Juvenile Court of Lancaster County: Toni G. Thorson, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and James G. Sieben for appellant.

Patrick F. Condon, Lancaster County Attorney, and Julie Mruz for appellee.

Pirtle, Bishop, and Arterburn, Judges.

Pirtle, Judge.

## INTRODUCTION

Robert W. appeals from two orders of the separate juvenile court of Lancaster County finding that all community-based resources to assist him and his family in keeping Robert in the family home had been exhausted and ordering him placed outside of the home. Based on the reasons that follow, we affirm.

## BACKGROUND

On November 6, 2017, a petition to adjudicate Robert was filed, alleging that he had committed two felony offenses: terroristic threats and use of a deadly weapon to commit a felony. The charges stemmed from an incident in which Robert pointed a handgun at the back of another juvenile's head. An order for immediate custody was attached to the petition. A supplemental petition was filed on November 9, alleging three additional misdemeanor charges. On November 17, Robert entered a no contest plea to the use of the deadly weapon to commit a felony offense and he was adjudicated under Neb.

- 13 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

Rev. Stat. § 43-247(2) (Reissue 2016). The remaining charges were dismissed.

Following his adjudication, the court ordered him to be "detained at the Lancaster County Juvenile Detention Center [and to] cooperate with a co-occurring evaluation" with psychological testing. Dr. Leland Zlomke, a licensed psychologist, conducted an evaluation on December 4, 2017, and an updated evaluation on December 21.

Four continued disposition hearings were held between December 8, 2017, and February 16, 2018. During this time, Robert remained at the detention center. The evidence presented at the disposition hearings showed that when police officers went to Robert's home on November 3, 2017, to retrieve the gun used in the offense, officers noticed a "strong odor of marijuana" throughout the home, "as if marijuana is smoked within the house on a consistent basis." Robert's mother, Kelley B., had a boyfriend, Jamil W., who lived with Robert and Kelley. Jamil has a criminal history involving marijuana. Probation reports showed that there had been repeated burglaries at Robert's home, and the police indicated that the break-ins were related to the belief that there were large quantities of illegal substances in the home.

At the first disposition hearing on December 8, 2017, Robert's probation officer, Allison Rusler, stated that Robert and Kelley wanted him to return to his home. Rusler discussed the safety plan recommended for Robert if he were to be placed in Kelley's home. Rusler testified that Kelley had indicated she was willing to follow the safety plan. The plan included a requirement that Robert be supervised by an adult at all times. Kelley indicated that Jamil would be one adult that could supervise Robert, and she indicated they coparent together. In addition to Jamil's criminal history of drug use, Jamil has a history of assaultive behavior, including domestic violence against Kelley. Most recently, in October 2017, Jamil was charged with assault in the second degree for "assaulting an individual with a baseball bat."

- 14 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

Kelley also provided the names of other individuals who could assist her in continuously supervising Robert, including Desiree H., who had a criminal history that included citations for marijuana possession as recently as August 2017 and whose own children have been adjudicated and removed from her home. Other names listed as potential supports for Robert's at-home placement included Desiree's mother, who was cited for "child abuse/neglect" in 2001; an individual who lives outside of the state and who could not assist with implementing the safety plan; and an individual who struggles with mental health disorders.

Rusler also discussed the first psychological evaluation performed by Zlomke. In the initial evaluation, Zlomke noted that Robert had a moderate to high risk of recidivism. Zlomke's recommendations included weekly outpatient psychotherapy, cognitive behavioral therapy and "moral decision making" therapy, in-home family therapy and skill building, random drug screenings, and a stable school placement. According to Rusler, Zlomke did "not necessarily recommend[] himself that [Robert] be released" to live in Kelley's home, but did recommend that a "strict safety plan" would need to be put into place if Robert were placed in Kelley's home. Rusler indicated that there would be significantly less risk to the community if Robert were to be placed "in a group home setting" as opposed to in-home placement.

Rusler informed the court that Zlomke did not have important collateral information available at the time he completed the first evaluation. Therefore, the court allowed the probation office to provide Zlomke with supplemental information, which led to an updated evaluation report.

Zlomke's updated evaluation, dated December 21, 2017, was discussed at the continued disposition hearing on December 28. The evaluation stated that Robert has a long-term history of "impulsive, disrespectful and aggressive behavior," starting around age 10. Robert had received special education supports for several years and had been educated in schools with

- 15 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

additional supports for youth with behavioral disturbances on and off over the years.

The updated evaluation noted that Robert's school attendance worsened significantly between 2013 and 2016. In the most recent school year at the time of the evaluation, he was tardy to first period approximately 90 percent of the time. In 2017, Robert was suspended from school three times between September and November. The suspensions resulted from incidents involving disrespect of authority, verbal threats (including threats to bring a weapon to school on September 9), assault of another student on October 4, and actual possession of a gun and threats on November 3. Outside of school, Robert's criminal activity escalated over the course of 2017. The incidents included an assault in April, a minor in possession charge in May, shoplifting and a second assault in October, and finally the incident with the loaded firearm in November.

Zlomke's updated evaluation noted that Robert had participated in a diversion program for the minor in possession charge, but Robert had reoffended before completion of the program. Robert was charged with shoplifting and assault while in the diversion program. Robert was told that if he finished diversion successfully, he would not be referred to the county attorney for the shoplifting and assault charges. However, Robert was subsequently discharged from the diversion program after the November 2017 gun incident in the present case.

Zlomke diagnosed Robert with childhood-onset conduct disorder, a condition that manifests as "defiance, anger and disruptive" behaviors when challenged by authority figures, and "[o]ther specified impulse control problems." Zlomke maintained that Robert posed a "moderate to high" risk for recidivism without appropriate supports, supervision, and treatment.

Zlomke's updated evaluation made several recommendations as to how to handle Robert's case going forward. First, Zlomke recommended that due to Robert's risk level and the

- 16 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

seriousness of his offense, Robert would need "a coordinated nearly continuously supervised safety plan [which] will need outside supports to the family in-home and community with close collaboration between home and school. Outside supports may include evening reporting, tracker/community support and in-home treatment nearly every day initially. Possibly electronic monitoring as well." Zlomke also recommended "[i]ntense special educational supports," including collaboration with parents or trackers to "'pass'" Robert from one adult who is sure he has no weapons to the next adult. He also continued his recommendations from his initial report for individual therapy, "moral decision making" therapy, and random drug screens.

At the December 28, 2017, disposition hearing, Jody Busse, Rusler's supervisor, testified that Yankee Hill School, a highly supervised and highly structured high school in Lincoln, Nebraska, was being considered as the school Robert would attend. She testified that she believed the school would meet Robert's educational needs. She also indicated that Yankee Hill School could at least in part meet the recommendation for intense special education supports. Busse also testified that the probation office was recommending an intensive in-home service such as "Multisystemic Therapy" or "Intensive Family Preservation." Busse also testified that there was difficulty in finding therapy providers to treat Robert in his home, as there were concerns about the severity of his offense and the community safety risk.

Kelley testified that if Robert were to be placed in his home, she would take Robert to school in the morning and pick him up after school and she would take him to work with her during times when school was not in session.

Regarding out-of-home placements, as of the December 28, 2017, hearing, Robert had been accepted by Clarinda Academy in Clarinda, Iowa, and his case was under review by several group homes. The court determined that disposition should be continued because it wanted to hear back from other residential

- 17 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

placements before entering final disposition and because it wanted more information about what type of safety plan could be developed that did not have "gaps."

The next disposition hearing was held on January 16, 2018. Rusler explained the safety plan that was developed by the probation office which included either "Multisystemic Therapy" or "Intensive Family Preservation" services in the home; Robert's attending Yankee Hill School; Kelley's taking him to and from school and taking him with her to work when necessary; an electronic monitor; and individual and family therapy. The safety plan also recommended that Robert have no contact with certain individuals and submit to random drug tests. Rusler testified that a "tracker" could also be used, which is someone who would meet with Robert multiple times per week, as well as day and/or evening reporting if needed. Rusler also testified that the safety plan required that Robert have constant supervision, which involved a risk that there would not be someone available to supervise him 100 percent of the time.

Rusler also testified at the January 16, 2018, hearing that it was unlikely that Yankee Hill School would be able to provide one-on-one monitoring of Robert; rather, supervision would be by teachers that are assigned to classes just like any other school. She further explained that she believed Yankee Hill School would do its best to comply with the safety plan, but she did not believe that there would be someone to walk Robert from classroom to classroom or that the school would provide extra supervision for Robert as compared to other students.

Rusler noted that Robert had been accepted for placement at the Omaha Home for Boys (OHB) and Clarinda Academy, pending an opening. She testified that Robert would be able to immediately begin the therapy services Zlomke recommended at either of these placements. She also stated that OHB and Clarinda Academy both have their own on-campus schools.

At the same hearing, Kelley again testified that she would follow the safety plan and was willing to cooperate with any

- 18 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

services put in place. She also confirmed her intent to rely on help from Desiree, Desiree's mother, and an individual who struggles with mental health disorders during times she was unable to supervise Robert.

On January 24, 2017, the court entered an "Order Continuing Dispositional Hearing on the Second Amended Petition" noting that Zlomke recommended a coordinated "'nearly continuously supervised'" safety plan and the probation office had made an effort to develop such a plan. The court found that the supports and safety plan that could be developed in the community were inadequate to provide the level of supervision that Robert required to be able to remain in the family home. The court stated that Robert presented

> a serious risk to the community and himself. Given the high level of risk and inadequate safety plan available in the home, even with supports provided by probation, the Court finds: all available community-based resources have been exhausted to assist the juvenile and his family; and maintaining the juvenile in the home presents a significant risk of harm to the juvenile and the community.

The court continued the disposition hearing pending an opening at OHB.

Following a disposition hearing on February 16, 2018, the court entered an order titled "Reasonable Effort Determination; Order Continuing Detention; Notice of Review Hearing," finding that reasonable efforts had been made and all available community resources had been exhausted to assist Robert and his family in maintaining him in the family home. The court stated that the efforts considered and attempted included the probation office's efforts to develop an adequate safety plan, contact with in-home therapeutic services, background checks of possible safety monitors, evaluation, and updated evaluation. The court further found that maintaining Robert in the home presented a significant risk of harm to him and the community.

- 19 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

The court also entered an "Agreement and Order of Probation," placing Robert on probation for the duration of his minority, with a review in 6 months, and ordering him to reside at OHB.

Robert filed a timely appeal. Subsequently, the State filed a "Suggestion of Mootness and Motion to Dismiss," along with a motion to file a supplemental transcript. The State alleged that following a probation review hearing in the juvenile court on August 20, 2018, Robert was allowed to transition back to Kelley's home, and that as of August 28, he was residing there full time. As a result, the State alleged Robert's appeal was now moot. Robert filed an objection to the State's "Suggestion of Mootness and Motion to Dismiss." He does not dispute that he is back in Kelley's home, but argues that such fact alone does not make the case moot. We denied the State's motion at the time "with arguments preserved for final submission to the court."

## ASSIGNMENT OF ERROR

Robert assigns that the juvenile court erred in finding that all community-based resources to assist him and his family had been exhausted prior to the court entering an order removing Robert from his family home.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Dana H.*, 299 Neb. 197, 907 N.W.2d 730 (2018).

## ANALYSIS

*Mootness.*

[2,3] Before reaching the legal issues presented, we must first address the State's argument that this appeal has become moot. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d

- 20 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

868 (2018). An actual case or controversy is necessary for the exercise of judicial power. *Id.*

[4-6] A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Id.* Usually, in the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory. *Id.* Therefore, as a general rule, a moot case is subject to summary dismissal. *Id.*

In this appeal, Robert challenges his placement outside his home. At this point in time, Robert is no longer in out-of-home placement—he is living with his mother, Kelley. We conclude that this case is moot because the parties no longer have a cognizable interest in the outcome of the determination of whether the court erred in finding that all community-based resources had been exhausted and in placing Robert outside the home as a dispositional order.

[7,8] Nonetheless, under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination. *Weatherly v. Cochran, supra*. In determining whether the public interest exception should be invoked, the court considers the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. *Id.*

Although the appeal is moot, we choose to address, under the public interest exception, the issue of whether all community-based resources had been exhausted when the court determined to place Robert outside his home. Authoritative guidance on the matter is desirable because it is likely to reoccur in the future. We note, however, that the issue of

- 21 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

whether community-based resources have been exhausted is fact specific and must be determined based on the circumstances of each case. Because we conclude that the public interest exception to the mootness doctrine applies, we next address the merits of the issue presented.

*Out-of-Home Placement.*

Robert assigns that the juvenile court erred in finding that all community-based resources to assist him and his family had been exhausted prior to the court's entering an order placing him out of the home. The controlling statute applicable to this case is Neb. Rev. Stat. § 43-251.01(7) (Reissue 2016), which provides:

> A juvenile alleged to be a juvenile as described in subdivision (1), (2), (3)(b), or (4) of section 43-247 shall not be placed out of his or her home as a dispositional order of the court unless:
>
> (a) All available community-based resources have been exhausted to assist the juvenile and his or her family; and
>
> (b) Maintaining the juvenile in the home presents a significant risk of harm to the juvenile or community.

[9] The exhaustion requirement of § 43-251.01(7)(a) demands evidence establishing that no other community-based resources have a reasonable possibility for success or that all options for community-based services have been thoroughly considered and none are feasible. *In re Interest of Keyanna R.*, 299 Neb. 356, 908 N.W.2d 82 (2018); *In re Interest of Dana H.*, 299 Neb. 197, 907 N.W.2d 730 (2018).

The evidence showed that the probation office tried to develop an adequate safety plan that would allow Robert to stay in his home. However, the plan required that Robert be supervised by an adult at all times. There was obvious risk to this plan in that it would be difficult to enforce 100 percent of the time. The safety plan also included in-home therapy, an electronic monitor, no contact with certain individuals, and random drug tests. Probation also considered use of a tracker,

- 22 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF ROBERT W.
Cite as 27 Neb. App. 11

who could meet with Robert up to five times per week, as well as day and/or evening reporting if needed. The probation office also performed background checks on the individuals Kelley identified as those she would rely on for help in supervising Robert. The individuals included Jamil, Kelley's live-in boyfriend who has a criminal history of assault, including assault of Kelley, as well as a criminal history involving marijuana. The other individuals Kelley identified to help supervise Robert all have various issues making them less than ideal candidates for supervising Robert. Also, Yankee Hill School, the school that Robert was going to attend, could not provide the level of supervision Robert required. The evidence also showed that Robert was unsuccessfully discharged from a diversion program in regard to a previous crime. He also posed a moderate to high risk factor of recidivism without appropriate supports, supervision, and treatment.

The record establishes that other options for community-based resources were thoroughly considered but deemed inappropriate or unnecessary. We conclude that the evidence supports the juvenile court's determination that all available community-based resources had been exhausted to assist Robert and his family in maintaining him in the family home, as required by § 43-251.01(7)(a).

In regard to the risk analysis required under § 43-251.01(7)(b), Robert does not allege error in the court's finding that this requirement was met. He alleges only that the court found that this factor was met and then improperly relied on that finding to conclude all community-based resources were exhausted. We conclude that this factor is clearly met, and we need not address it further.

## CONCLUSION

For the reasons set forth above, we affirm the orders of the juvenile court finding that all community-based resources were exhausted and placing Robert outside his home.

AFFIRMED.