IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF FAITH S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF FAITH S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JOHN S., APPELLANT.

Filed December 17, 2019.    No. A-19-512.

Appeal from the Separate Juvenile Court of Douglas County: DOUGLAS F. JOHNSON, Judge. Affirmed.

Joseph P. Naatz, of Kreikemeier Law, L.L.C., for appellant.

Nathan Barnhill, Deputy Douglas County Attorney, for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

John S. appeals the Douglas County Separate Juvenile Court order adjudicating his minor child, Faith S. On appeal, John contends that the juvenile court erred in (1) granting the State's motion to continue the adjudication hearing; (2) receiving, over objection, a certified copy of John's prior conviction for third offense driving under the influence; (3) failing to exclude the testimony of the child's natural mother; (4) allowing the child's grandmother to testify about the results of Faith's hair follicle test; and (5) finding by a preponderance of the evidence that Faith fell within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Based upon the analysis set forth herein, we affirm.

- 1 -

## STATEMENT OF FACTS

In October 2018, the State filed an adjudication petition alleging that Faith S., born in November 2017, was a juvenile who lacked proper parental care by reason of the fault or habits of John. Specifically, the petition alleged Faith lacked proper care due to John's (1) use of controlled substances and/or alcohol; (2) failure to provide proper parental care, support, and/or supervision; and (3) failure to provide safe, stable and/or appropriate housing. The adjudication hearing was scheduled to begin in December 2018, but it was continued to March 6, 2019.

At the March 6, 2019, adjudication hearing, the State requested a continuance because one of its subpoenaed witnesses was not present. The juvenile court granted the motion over John's objection. When the hearing resumed on March 26, John's counsel requested a continuance which was granted. The adjudication hearing resumed on April 23. At the adjudication hearing, the State called as witnesses: Morgan Praeuner, a child and family services specialist employed by the Department of Health and Human Services (DHHS); Linda Freeman (Linda), John's mother; and Martha C., John's former girlfriend and Faith's mother.

### Morgan Praeuner

Praeuner testified that she conducted three investigations regarding Faith in 2018. The first investigation occurred in May 2018 after Praeuner learned Faith had received an unexplained injury to the back of her head, the location of which suggested Faith had been dragged. Praeuner met John, Linda, and a detective at Children's Hospital and Medical Center. Praeuner testified that there were different accounts about how Faith sustained her injury; one story purported the injury was a rug burn that occurred at daycare. Praeuner also testified she learned Faith's basic needs were provided by Linda and Martha. Praeuner testified that although she had concerns that Linda provided for Faith's basic needs, she decided not to remove Faith from John's care at that point in time. Instead, Praeuner attempted to institute a safety plan, but John refused. Praeuner explained Faith remained in the care of her parents because doctors had been unable to determine the cause of Faith's injury, so Praeuner did not have any direct evidence supporting an "unsafe" finding.

Praeuner's second investigation occurred after an August 6, 2018, intake regarding concerns about Martha's ongoing use of controlled substances. Praeuner testified that during the second investigation, she attempted to contact John six times and he returned her phone calls three times. Praeuner testified that John did not agree to a safety plan, that his contact with her was minimal, that his behavior was erratic, and that he did not let her see Faith. Praeuner testified she did not offer any services to John during the second investigation because he did not agree to a safety plan.

Praeuner's third investigation concerned a September 27, 2018, intake which involved substance use and concerns about John driving with Faith on an all-terrain vehicle (ATV) while he was intoxicated. The third investigation resulted in an affidavit of removal without any interaction with John or Faith.

After the September investigation, Faith was placed into protective custody due to the ongoing concerns from the three investigations, including substance use by both parents, lack of cooperation, and domestic violence or an unstable relationship between John and Martha.

Praeuner testified that since her involvement in this case, she has observed signs of drug use in John, including erratic behavior where John was angry during one phone call but then completely calm the next, and he would agree to meet with Praeuner but then later cancel. Despite her observations, Praeuner testified her substance abuse concerns were not substantiated outside of interviews with persons associated with John and John never tested positive for any controlled substance nor was he arrested for possession of illegal narcotics or driving under the influence. Praeuner opined that Faith was at risk of harm if returned to John's home and formed that basis on collateral contacts, such as conversations she had with John and attempting to contact John and Martha.

LINDA'S TESTIMONY

Linda, John's mother, testified John had told her that he suspected Martha smoked methamphetamine while pregnant with Faith and this was an ongoing concern for John. Linda also expressed concern about Martha's drug use. Linda testified John would call to ask her to care for Faith when he suspected Martha was doing drugs. Linda further testified that since Faith's birth, Martha would leave John approximately every 3 weeks, with the car packed and taking Faith with her. Linda testified that this created instability for Faith and that both John and Martha were responsible for the instabilty. She also related an instance when John was away from home at a campground and he contacted Linda to request that she check on Martha; when she did so, she found Faith locked in a car.

Linda testified that John had previously used marijuana and had an interlock system for a previous driving under the influence offense. Linda testified John drinks too much, then passes out or gets injured. Linda testified she had concerns about John's drinking to excess which might impair his ability to care for Faith, but she had not seen John drink in Faith's presence. Further, on one occasion she observed marijuana paraphernalia in John's home when she picked up Faith to care for her. Additionally, Linda testified a methamphetamine pipe was found in John's work tool bag, which angered John because it appeared someone had planted the pipe in his bag.

In October 2018, Linda became concerned that Faith was around someone who used methamphetamine because Faith slept all the time. This concern led Linda to cut Faith's hair and submit a hair follicle test to an online testing company. Linda testified she received results showing that Faith tested positive for methamphetamine and that "she was around a heavy dose of meth[amphetamine]." John objected to this line of testimony on foundational grounds.

Linda testified that John would be a good father for Faith, but he would need Linda for support and babysitting because he works full time. Linda testified that she provided for Faith's basic needs including providing clothes, formula, diapers, and a daycare deposit, although she admitted that John did purchase clothes and food for Faith. Linda expressed that, in the past if she did something wrong, John and Martha would prevent her from seeing Faith, so she expressed fear that she may never see Faith again if she revealed anything negative about John and Martha.

STATE'S REQUEST TO CONTINUE HEARING

At the close of Linda's testimony, the State requested to continue the hearing because a subpoenaed witness had failed to appear. The State also noted two material witnesses were not

present, even though one witness was present for a prior hearing and knew about the first continuance. John's counsel objected, stating a continuance was previously granted to allow Martha to hire a new attorney, and this second continuance was premised on a witness who chose not to appear and honor that subpoena, so good cause for the continuance has not been shown. The juvenile court mentioned the State had perfected the subpoena and did not know why the witness was not present. The juvenile court decided to allow the State the opportunity to cure the issue.

HEARING RESUMED ON MARCH 26, 2019

The hearing resumed on March 26, 2019, at which time the juvenile court received, over John's relevancy objection, a certified copy of John's 2008 conviction for third offense driving under the influence. The State then called Martha to testify. John's counsel renewed his objection to the continuance arguing the prior continuance was granted on the basis of calling a previously subpoenaed witness and not Martha. John's counsel also requested the exclusion of Martha's testimony due to the State's failure to list Martha as a witness in violation of John's rights to due process. John also argued that the trial court had ordered that the parties had 30 days to exchange witness lists which order the State had failed to follow.

The State responded that Martha had been listed as a party from the beginning of the case and that the State provided proper notice. The State also informed the juvenile court that the witnesses for whom the state had sought the continuance had informed the State that they would not tell the truth if called to testify. John's counsel also moved for a continuance to be able to depose Martha prior to her testimony, which request was granted.

MARTHA'S TESTIMONY

On April 23, 2019, the proceedings resumed with Martha's testimony. Martha testified she and John were in a 4-year relationship and cohabitated for 3 of those years. Martha testified she provided care for Faith during the day while John worked to financially provide for them.

Martha testified John drinks alcohol every other day and every weekend including drinking in Faith's presence. Martha testified that the majority of John's drinking occurred at the campground. However, sometimes John would drink at home, and when he did so he would not interact with Faith. Martha testified John also used methamphetamine and cocaine in his home around June and July 2018, but Faith was not present at that time.

Martha next testified about John's abuse of her. Martha testified that John has been verbally abusive and violent in front of Faith, which scared Faith. Martha explained John calls her foul names in front of Faith regardless of whether he is sober or intoxicated. Martha testified about one incident when she, John, and Faith were at a campground. Martha explained John had become very intoxicated, so she dumped out his alcohol, making John upset in front of Faith. Martha testified John pushed her out of the camper at 3 a.m. while she was holding Faith. Martha testified John hit her when she was 6 months pregnant with Faith, and since then has become violent a couple times while she was holding Faith. Martha testified about another occasion when she was at the campground in October 2018 when John became intoxicated and drove Faith around on an ATV. Martha also testified John has kicked Martha and Faith out of the house at least five times, sometimes while he is under the influence of alcohol but other times while sober. Martha testified

that, in her opinion, John is not able to properly care for Faith because of his addictions. He leaves for 4 to 5 days at a time, and Faith would not be safe in his care.

On cross-examination, Martha testified she has used methamphetamine as recently as 1 year prior to the hearing but is drug free and sober, which she claims she achieved on her own without treatment. Martha testified she has been involved with Child Protective Services for many years and has had several children removed from her care.

## JUVENILE COURT ORDER

The juvenile court found Faith was within the meaning of § 43-247(3)(a) as it concerns John. The juvenile court found all of the allegations raised in the petition were true, and specifically that Faith lacked proper care due to John's use of controlled substances and/or alcohol; his failure to provide proper parental care, support, and/or supervision for Faith; and his failure to provide safe, stable, and/or appropriate housing for Faith. The juvenile court also noted that returning Faith to her home would be contrary to her health and safety and that it was in her best interests to remain in the temporary custody of DHHS.

## ASSIGNMENTS OF ERROR

John argues the juvenile court erred in (1) granting the State's motion to continue the adjudication hearing without good cause; (2) receiving, over objection, a certified copy of John's prior conviction for third offense driving under the influence; (3) failing to exclude Martha's testimony; (4) allowing Linda to testify about the results of Faith's hair follicle test; and (5) finding by a preponderance of the evidence that Faith fell within the meaning of § 43-247(3)(a).

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Robert W.*, 27 Neb. App. 11, 925 N.W.2d 714 (2019). When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016); *In re Interest of Becka P.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

An appellate court's review of a juvenile court's determination of whether a juvenile has been denied his or her statutory right to a prompt adjudication is made de novo on the record to determine whether there has been an abuse of discretion by the juvenile court. *In re Interest of Nathan L.*, 23 Neb. App. 239, 870 N.W.2d 159 (2015). Prompt adjudication determinations are initially entrusted to the discretion of the juvenile court and will be upheld unless they constitute an abuse of discretion. *Id.* The rules of evidence apply at adjudication hearings. Neb. Rev. Stat. § 43-279(1) (Reissue 2016); *In re Interest of Elijah P. et al.*, 24 Neb. App. 521, 891 N.W.2d 330 (2017).

After hearing the evidence, the court shall make a finding and adjudication to be entered on the records of the court as to whether the allegations in the petition have been proven by a preponderance of the evidence in cases under § 43-247(3)(a). Neb. Rev. Stat. § 43-279.01(4) (Reissue 2016); *In re Interest of Chloe P.*, 21 Neb. App. 456, 840 N.W.2d 549 (2013).

## ANALYSIS

### GRANTING OF STATE'S MOTION FOR CONTINUANCE

John challenges the juvenile court's granting of the State's motion to continue the adjudication hearing. First, he argues that the continuance caused the second day of the hearing to be held more than 90 days after the filing of the adjudication petition. Second, John argues the State did not request a continuance for good cause as required by statute, but instead, requested the continuance in order to delay the proceedings so as to gather additional, unknown evidence from Martha, who had been recently adjudicated.

In *In re Interest of Brianna B. & Shelby B.*, 9 Neb. App 529, 614 N.W.2d 790 (2000), this court addressed arguments similar to those being raised by John now. In *In re Interest of Brianna B. & Shelby B.*, the juvenile court granted a continuance to allow the State to secure testimony from a witness who was not present and a new witness whose information was made available a few days prior to the adjudication hearing resulting in the hearing being completed outside of the 90-day statutory timeframe. In addressing the issue, we stated:

Scott asserts that the court erred in allowing the adjudication hearing to be completed more than 90 days after the petition was filed.

Section 43-278 provides that an adjudication hearing shall be conducted within 90 days after a petition is filed. However, the Nebraska Supreme Court has held that § 43-278 is directory, not mandatory. See *In re Interest of Brandy M. et al.*, 250 Neb. 510, 550 N.W.2d 17 (1996). . . . The facts of the present case indicate that the adjudication was completed approximately 5 months after the petition was filed. . . .

Scott also asserts that the court erred in granting a continuance of the adjudication hearing. The adjudication hearing was started on July 15, 1999, at which time Michelle and Scott both were called to testify. At the conclusion of their testimony, the State moved for a continuance, asserting that testimony from the children was needed, as well as the results of alcohol evaluations conducted on Michelle and Scott. The State asserted a belief that the additional evidence would contradict the testimony provided by Michelle and Scott. The guardian ad litem joined in the request. The court noted that the time it had allotted for the hearing that day had been used. The court continued the hearing. On August 31, Brianna testified, as well as Michelle's mother and a mental health therapist who had conducted an alcohol evaluation on Michelle.

The granting or denial of a continuance or a hearing is within the discretion of the trial court. *In re Interest of H.P.A.*, 237 Neb. 410, 466 N.W.2d 90 (1991). In the absence of a showing of an abuse of discretion, a ruling on a motion for continuance will not be disturbed on appeal. *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997). At trial, the State argued a need to have the children testify because of a belief that the children's testimony would differ from that given by Michelle and Scott on the first day of the adjudication hearing. The State indicated that the children were not present for the initial hearing out of a desire not to force them to testify unless necessary. Additionally, the State indicated that alcohol evaluations had been made available to the State only a few days prior to the adjudication hearing, leaving inadequate time to subpoena the evaluators. We

do not find an abuse of discretion by the trial court in granting the continuance on these facts.

*In re Interest of Brianna B. & Shelby B.*, 9 Neb. App. at 531-32, 614 N.W.2d at 793.

Similarly, as in *In re Interest of Brianna B. & Shelby B.*, the issue of whether the court should have granted the continuance which allowed the hearing to be continued beyond the 90-day statutory timeframe for conducting such hearings was left to the discretion of the trial court. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Here, the State argued a continuance should be granted because one of its subpoenaed witnesses was not present despite having the subpoena perfected. The juvenile court granted the motion over John's objection to give the State time to cure the witness' apparent disregard for the judicial process. We do not find an abuse of discretion in allowing a party time to procure a witness under these facts. Although that witness later failed to appear at the continued hearing, that factor does not defeat the basis for the court's analysis of the issue in real time, nor does it suggest illicit intent in connection with the State's request. John's first assignment of error fails.

ADMISSIBILITY OF PRIOR CONVICTION

John contends the juvenile court erred in admitting his prior conviction for driving under the influence. John argues his prior conviction is not relevant and should not have been considered by the juvenile court.

In *In re Interest of Brettany M. et al.*, 11 Neb. App. 104, 110, 644 N.W.2d 574, 581 (2002), we stated:

[E]vidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. *In re Interest of Andrew M., Jr. & Marceleno M.,* [9 Neb. App. 947, 622 N.W.2d 697 (2001)]; *In re Interest of Theodore W.,* [4 Neb. App. 428, 545 N.W.2d 119 (1996)]. There are two components of relevant evidence: materiality and probative value. *In re Interest of Andrew M., Jr. & Marceleno M., supra*. Materiality is defined as the relation between the propositions for which the evidence is being offered and the issues in the case. *Id*. To be probative, the evidence must tend to establish what it is that is being offered to prove. *Id.*

"[T]he purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child." *In re Interest of Ezra C.*, 25 Neb. App. 588, 594, 910 N.W.2d 810, 814-15 (2018).

As such, the evidence of John's prior DUI conviction would be relevant if it was material and probative of matters pertaining to protecting the interests of Faith. Here, Linda testified that John drinks too much alcohol and then passes out or gets injured. She voiced her concerns about John's drinking to excess as it might impair his ability to care for Faith. Martha also testified about John's drinking habits and their impact on his ability to care for Faith. That testimony included, but was not limited to, her claim that John drove Faith on an ATV while intoxicated. In short, the record establishes that John has a history of alcohol abuse and how that abuse directly related to

his inability to properly care for Faith. As such, John's prior conviction is material and probative of safety concerns in relation to the protection of Faith. Accordingly, the juvenile court did not err in admitting John's prior conviction on the basis of John's relevancy objection.

<h3 align="center">FAILURE TO EXCLUDE MARTHA'S TESTIMONY</h3>

John argues the juvenile court erred in not excluding Martha's testimony. John cites Neb. Rev. Stat. § 29-1602 (Reissue 2016) for the proposition that because Martha was not an endorsed witness, the juvenile court erred in allowing her to testify. We note that § 29-1602 is a criminal statute. John cites no authority which could suggest that this specific criminal statute would apply in the context of a juvenile adjudication proceeding, and we find none. See, generally, *In re Interest of Heather R. et al.*, 269 Neb. 653, 694 N.W.2d 659 (2005) (holding termination of parental rights proceeding is civil rather than criminal in nature).

Separately, at the hearing, the State called Martha to testify. John's counsel objected arguing Martha was noticed as a witness only seven days before the hearing. John's counsel requested a continuance which the juvenile court granted to allow John's counsel time to depose Martha prior to her testimony. When a continuance will cure the prejudice caused by belated disclosure of evidence, a continuance may be requested by counsel and granted by the trial court. See *In re Interest of Brianna B. & Shelby B., supra*. After reviewing the record, we find that John was not prejudiced by the juvenile court allowing Martha to testify. Accordingly, the juvenile court did not err in allowing Martha to testify and this assignment of error fails.

<h3 align="center">SUFFICIENCY OF EVIDENCE/HAIR FOLLICLE TEST</h3>

John argues that the State failed to show by a preponderance of the evidence that Faith is in definite risk of future harm. He also argues that the juvenile court erred in allowing Linda to testify regarding the results of the hair follicle test that she had submitted to an online testing company. Assuming without deciding that the juvenile court should not have allowed the testimony regarding the hair follicle test, we proceed to consider the sufficiency of the evidence to support the juvenile court's adjudication of Faith pursuant to § 43-247(3)(a) without evidence of the hair follicle test.

The State's petition in the present case alleged Faith lacked proper care due to John's (1) use of controlled substances and/or alcohol; (2) failure to provide proper parental care, support, and/or supervision of Faith; and (3) failure to provide safe, stable and/or appropriate housing for Faith.

In *In re Interest of Chloe P.*, 21 Neb. App. 456, 466, 840 N.W.2d 549, 558 (2013), this court stated:

> Section 43-247(3)(a) provides that the juvenile court shall have jurisdiction over any juvenile "'who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; . . . or who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such juvenile[.]'"

The juvenile court shall have jurisdiction over a juvenile if the State proves that the juvenile is within the meaning of § 43-247(3)(a) by a preponderance of the evidence. See *In re Interest of Heather R. et al.,* 269 Neb. 653, 694 N.W.2d 659 (2005). While the State need not prove that the juvenile has suffered physical harm to find the juvenile to be within the meaning of § 43-247(3)(a), the State must establish that "'without intervention, there is a definite risk of future harm.'" *In re Interest of Anaya,* 276 Neb. 825, 838, 758 N.W.2d 10, 21 (2008). In order to establish a "'definite risk of future harm,'" there must be an evidentiary nexus between the allegations of the petition and a definite risk of future harm. *In re Interest of Taeven Z.,* 19 Neb. App. 831, 839, 812 N.W.2d 313, 321 (2012).

Here, the evidence established a pattern of alcohol and substance abuse by John and the impact of that abuse in his care for Faith. Both Linda and Martha testified regarding John's alcohol and drug use. Martha testified that John drinks alcohol every other day and every weekend and drinks in Faith's presence. Linda testified that John's drinking caused her concern because he often drinks to excess which might impair his ability to care for Faith. Martha confirmed this with her testimony that when John would drink at home, he would not interact with Faith.

In addition to alcohol, Martha testified John used methamphetamine and cocaine in his home around June and July 2018, but Faith was not present at that time. Linda testified that she observed marijuana paraphernalia in John's home when she picked up Faith to care for her and that a methamphetamine pipe was found in John's work tool bag. John's drinking resulted in a third offense driving under the influence conviction which led to an interlock device being placed in his vehicle. Further, in October 2018, while he was intoxicated, John drove Faith around on an ATV. Martha opined that John is not able to properly care for Faith because of his addictions.

The evidence also established that John had been verbally abusive to Martha in Faith's presence, which scared Faith. According to Martha, John has also physically abused Martha when she was pregnant with Faith, while she was holding Faith, and when he kicked Martha and Faith out of his home on five separate occasions despite his knowledge of Martha's substance abuse problems and own lack of care for Faith, including but not limited to Linda's discovery of Faith being locked in a car while apparently under Martha's supervision.

Praeuner's testimony likewise supports the proposition that notwithstanding the faults and habits of both John and Martha, John refused to engage in a safety plan and was both unsupportive and uncooperative in the State's attempts to ensure Faith's safety. Upon our de novo review, even without any testimony involving hair follicle testing, we find the evidence sufficient to support the allegations in the petition for adjudication. It appears from the record that while John provides financially for Faith, he has not provided proper care or a safe, stable environment for her. Accordingly, the State met its burden of proving by a preponderance of the evidence that Faith is at a definite risk of future harm. Inherent in our finding that even without evidence of the hair follicle test the State met its burden here is our conclusion that any error in the admission of that evidence was harmless. See *State ex rel. Douglas v. Morrow*, 216 Neb. 317, 343 N.W.2d 903 (1984) (error in admission of evidence is not grounds for reversal of judgment when no prejudice results from such error).

## CONCLUSION

For the reasons previously articulated, we affirm the juvenile court's order adjudicating Faith as it concerns John.

AFFIRMED.