Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:11 AM CST

Michelle Weatherly, appellee, v.
Luke J. Cochran, appellant.
___ N.W.2d ___

Filed October 26, 2018.    No. S-17-1329.

1. **Moot Question: Jurisdiction: Appeal and Error.** Mootness does not prevent appellate jurisdiction. But, because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.

2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

3. **Jurisdiction.** An actual case or controversy is necessary for the exercise of judicial power.

4. **Moot Question: Words and Phrases.** A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.

5. **Judgments: Time.** Once a protection order has expired, the respondent is no longer affected by it.

6. **Moot Question: Appeal and Error.** Under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination.

7. **Moot Question: Words and Phrases.** In determining whether the public interest exception should be invoked, the court considers the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.

8. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to

interpretation to ascertain the meaning of statutory words that are plain, direct, and unambiguous.

9. **Statutes: Legislature: Intent.** The court, in discerning the meaning of a statute, should determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

10. **Statutes: Words and Phrases.** The meaning of "appear" in the context of Neb. Rev. Stat. § 28-311.09(8)(b) (Reissue 2016) includes both personal appearances by the respondent and appearances through counsel.

Appeal from the District Court for Douglas County: John E. Huber, County Judge. Appeal dismissed.

Diana J. Vogt, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

William H. Selde, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

Luke J. Cochran appeals the issuance of a harassment protection order and denial of a motion to vacate the ex parte harassment protection order against him. During a show cause hearing, the district court stated that because Cochran appeared through counsel rather than appearing in person, the ex parte harassment protection order would be automatically extended for 1 year. However, the court proceeded to allow the petitioner, Michelle Weatherly, to testify and allowed Cochran's counsel to cross-examine Weatherly. After the hearing, the district court found that Weatherly had presented evidence sufficient to extend the harassment protection order for 1 year, to expire on October 5, 2018. The central issues raised on appeal are (1) whether Weatherly was entitled to a harassment protection order under the terms of Neb. Rev. Stat. § 28-311.09

(Reissue 2016) and (2) whether a respondent against whom a harassment protection order is sought must appear in person rather than through counsel. We find that the appeal is moot, but apply the public interest exception to mootness to address the second inquiry.

## FACTS

Weatherly and Cochran were involved as partners in a roofing contractor business. Weatherly and Cochran worked together in a building owned by Cochran and leased to the business.

In July 2017, Cochran gave notice of his intent to resign his position at the roofing contractor business. Believing that Cochran would potentially depart negatively, Weatherly had an off-duty officer present for the removal of his belongings on his final day of employment.

When Cochran arrived at the office to remove his belongings, he met with Weatherly in her office. During this meeting, Cochran allegedly made threatening statements. Specifically, Cochran purportedly stated, "'Do you recall what happened to . . . Roofing? It's rumored that that was a business deal gone bad and that person was murdered because of that. I hope that doesn't happen to us.'" Although Weatherly noted that the environment was hostile throughout the rest of the day, Weatherly continued to talk to Cochran.

Later, after Cochran left the building, the off-duty officer suggested that Weatherly should go into Cochran's office to retrieve company documents and property before the locksmiths came to change the locks for the building. Upon entering Cochran's office, Weatherly and the officer found a handgun in Cochran's desk drawer. Weatherly subsequently told the off-duty officer that Cochran was a convicted felon, and the officer took possession of the weapon to ensure that an on-duty officer could seize it.

While Weatherly was waiting for the arrival of the on-duty officer, Cochran returned and attempted to enter the building.

When Cochran was stopped from entering the building by the off-duty officer, Weatherly alleged that Cochran made "a threatening gesture" that she interpreted to insinuate that she was "'going to get it.'" The actual gesture was not further described in the record.

On August 2, 2017, Weatherly filled out the application for the protection order. However, the application was not filed with the court until October 5. An ex parte harassment protection order was granted in favor of Weatherly, and a show cause hearing was requested by Cochran and held December 7, 2017.

At the show cause hearing, Weatherly and her counsel were in attendance, but Cochran appeared only through his attorney. Weatherly's testimony asserting and describing the aforementioned events was the only evidence received at the hearing. Cochran's counsel did not attempt to cross-examine Weatherly regarding her recitation of the relevant events on Cochran's final day with the company, but did question her as to her motivation for filing the protection order.

Cochran's counsel contended that a demand letter sent to Weatherly by Cochran's attorney regarding a civil lawsuit between Weatherly and Cochran was a motivation for Weatherly to file the protection order on October 5, 2017, more than 2 months after the events at issue. The letter and authenticating affidavit were marked as exhibit 1 and offered by Cochran. The letter was objected to by Weatherly on relevancy grounds. The district court sustained the objection and did not further allow this line of cross-examination. The court noted that Cochran's counsel was not entitled to go over the parties' history and the potential relevance of the demand letter because of Cochran's failure to appear at the hearing. The ex parte petition and affidavit were never offered at the show cause hearing.

The court made multiple statements throughout the hearing indicating that Cochran was required to appear in person to challenge the issuance of the harassment protection order

and was not allowed to appear through counsel. But, at the conclusion of the hearing, the district court ruled that, based exclusively on Weatherly's testimony of the events, the protection order would remain in effect for 1 year. Cochran appeals.

## ASSIGNMENTS OF ERROR

Cochran assigns that the district court erred in (1) granting the protection order on the evidence presented, (2) finding that Cochran was required to appear in court in person rather than through counsel to contest the issuance of the protection order, and (3) refusing to admit exhibit 1 into evidence.

## STANDARD OF REVIEW

[1] Mootness does not prevent appellate jurisdiction.[1] But, because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, we have reviewed mootness determinations under the same standard of review as other jurisdictional questions.[2] When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts.[3]

[2] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[4]

## ANALYSIS

Cochran asserts on appeal that the district court erred in finding that there was sufficient evidence to continue the harassment protection order against him for 1 year. Weatherly argues that the evidence was sufficient and that, in any event, the harassment protection order was appropriately granted as

---

[1] *BryanLGH v. Nebraska Dept. of Health & Human Servs.*, 276 Neb. 596, 755 N.W.2d 807 (2008).

[2] *Id.*

[3] *In re Interest of Anaya*, 276 Neb. 825, 758 N.W.2d 10 (2008).

[4] *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138 (2014).

a matter of law under § 28-311.09, because Cochran failed to appear at the hearing in person. Cochran counters that "appear" under Nebraska's harassment protection order statutes permits an appearance through counsel.

## Mootness

[3] Before reaching the legal issues presented, the issue we must first confront is whether this appeal has become moot in the pendency of its litigation and appeal. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[5] An actual case or controversy is necessary for the exercise of judicial power.[6]

[4] A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.[7] Usually, in the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory.[8] Therefore, as a general rule, a moot case is subject to summary dismissal.[9]

[5] In the case on appeal, the harassment protection order expired on October 5, 2018. At this point in time, no harassment protection order exists against Cochran. We have held in other protection order cases that once an order has expired, the respondent is no longer affected by it.[10] We have also

---

[5] *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

[6] *In re Interest of Anaya, supra* note 3.

[7] *BryanLGH v. Nebraska Dept. of Health & Human Servs., supra* note 1.

[8] *Id.*

[9] *Id.*

[10] *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000); *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999).

previously noted that because of the 1-year timeframes for protection orders, such cases will almost always be moot by the time the appeal is heard.[11] Similarly, this case is moot because the parties no longer have a cognizable interest in the outcome of the determination of whether the court erred in extending the harassment protection order under the terms of § 28-311.09.

[6,7] Nonetheless, under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination.[12] In determining whether the public interest exception should be invoked, the court considers the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.[13]

Although the appeal is moot, we choose to address the issue of whether a respondent against whom an ex parte harassment protection order has been issued must appear in person at a show cause hearing to challenge the issuance of the order, or can instead waive his or her appearance in person and appear through counsel at such hearing. Authoritative guidance on the matter is desirable because it is likely to reoccur in the future. This question is also public in nature, as it is not specific to the parties of this case. Rather, the interpretation of this issue may affect any respondent in a harassment protection order hearing.

In an effort to provide direction to the public, we address the "appearance" issue on appeal. Interpreting the meaning of "appear" under § 28-311.09 demands an authoritative

---

[11] *Id.*

[12] *Hauser v. Hauser*, 259 Neb. 653, 611 N.W.2d 840 (2000); *Elstun v. Elstun, supra* note 10.

[13] *Id.*

adjudication for future guidance of public officials.[14] However, we do not find it necessary under the public interest exception to address whether the evidence presented at the show cause hearing was sufficient to warrant the 1-year extension of the harassment protection order, which has since expired.[15]

### Meaning of "Appear" Under § 28-311.09

[8,9] Whether a respondent at the show cause hearing for the continuation of a harassment protection order is required to appear in person as opposed to appearing solely through counsel hinges on the statutory interpretation of the language in § 28-311.09.[16] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words that are plain, direct, and unambiguous.[17] The court, in discerning the meaning of a statute, should determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[18]

In 2012, § 28-311.09(8)(b) was amended to include the following language: "If the respondent has been properly served with the ex parte order and fails to appear at the hearing, the temporary order shall be deemed to be granted and remain in effect . . . ." On its face, § 28-311.09(8) provides that a court is required to grant a temporary order when a respondent was properly served with the ex parte order and fails to appear at the show cause hearing. It was plainly meant to address

---

[14] See *Hron v. Donlan, supra* note 10.

[15] See *Courtney v. Jimenez*, 25 Neb. App. 75, 903 N.W.2d 41 (2017) (holding that moot issue of sufficiency of evidence to support domestic abuse protection order does not fall under public interest exception).

[16] See § 28-311.09.

[17] *Dean v. State, supra* note 4.

[18] *Farmers Co-op v. State*, 296 Neb. 347, 893 N.W.2d 728 (2017).

the situation where a respondent fails to "appear" at a show cause hearing.

But the parties dispute the meaning of the word "appear." Cochran argues that by failing to specifically require in § 28-311.09(7) that a respondent appear in person, the Legislature plainly indicated that a respondent may appear solely through counsel to challenge the protection order. This is because, Cochran asserts, the plain meaning of "appear" in the context of a court hearing includes appearance through counsel. Cochran bolsters this argument by citing case law in which we have held in other civil proceedings that defendants were entitled to appear through counsel as opposed to attending in person.[19]

Conversely, Weatherly contends that to "appear" is limited to appearing in person. Weatherly's sole authority for this assertion is an unpublished Nebraska Court of Appeals case, *Kahm v. Wiester*.[20] In *Kahm*, the Court of Appeals held that as long as the respondent was served with the ex parte order, and he further failed to appear at the show cause hearing, the temporary order would be deemed to be granted and remain in effect.[21] *Kahm*, however, is distinguishable from the present matter, because the appellant in *Kahm* failed to appear in person *or through counsel*.[22]

The Legislature has not provided a controlling definition of the term "appear," but we look to the plain and ordinary meaning of the word within the context of this statute.[23] We

---

[19] See *Turbines Ltd. v. Transupport, Inc.*, 285 Neb. 129, 825 N.W.2d 767 (2013) (allowing defendant to appear through counsel to contest default judgment). See, also, *Rorick Partnership v. Haug*, 228 Neb. 364, 422 N.W.2d 365 (1988).

[20] *Kahm v. Wiester*, No. A-12-1157, 2013 WL 4713590 (Neb. App. Sept. 3, 2013) (selected for posting to court website).

[21] *Id.*

[22] See *id*.

[23] See *Farmers Co-op v. State, supra* note 18.

must look to the statutory language and apply its ordinary and grammatical construction, unless an intent appears to the contrary or unless, by following such construction, the intended effect of the provisions would apparently be impaired.[24]

We find no merit to Weatherly's contention that to "appear" in the context of § 28-311.09(7) means solely to appear in person and does not include appearance through counsel. Under Black's Law Dictionary, "appearance" is defined to mean "[a] coming into court as a party or an interested person, *or as a lawyer on behalf of a party or interested person . . . .*"[25] Further, American Jurisprudence defines in detail what constitutes an "appearance" in a legal context:

> An "appearance" is a coming into court as party to a suit, either in person or by attorney, whether as plaintiff or defendant. An "appearance" in an action involves some submission or presentation to the court by which a party shows his intention to submit himself to the jurisdiction of the court; the determining factor is whether he takes a part in the particular action which in some manner recognizes the authority of the court to proceed.[26]

The American Jurisprudence definition of "appearance" explicitly states that an appearance may occur either in person or *by an attorney*.

"Appear" as it is found in § 28-311.09(8)(b) is not narrowly confined to require the presence of a respondent in person. Rather, it is the same as any other "appearance" in court. Through a plain reading of this statute, we hold that a respondent is entitled to appear by and through his or her counsel. The determining factor is whether the respondent takes a part in the particular action in some manner that recognizes the authority of the court to proceed.

---

[24] *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

[25] Black's Law Dictionary 118 (10th ed. 2014) (emphasis supplied).

[26] 4 Am. Jur. 2d *Appearance* § 1 at 630 (2018).

## CONCLUSION

[10] We conclude that the meaning of "appear" in the context of § 28-311.09(8)(b) includes both personal appearances by the respondent and appearances through counsel. For the reasons set forth above, however, the instant appeal is moot. Therefore, we dismiss the present appeal.

Appeal dismissed.