IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LINCOLN LUMBER COMPANY V. TIEMANN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LINCOLN LUMBER COMPANY, A NEBRASKA CORPORATION, APPELLEE,

V.

JAMES TIEMANN, RUTH TIEMANN, AND ALYCIA TIEMANN BRADY, APPELLANTS.

Filed April 28, 2020.    No. A-18-920.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Scott A. Lautenbaugh, of Law Offices of Scott Lautenbaugh, for appellants.

Jonathan M. Brown, of Walentine O'Toole, L.L.P., for appellee.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

PIRTLE, Judge.

INTRODUCTION

Lincoln Lumber Company (Lincoln Lumber) brought an action against James Tiemann and Ruth Tiemann, husband and wife, and Alycia Tiemann Brady, the Tiemanns' daughter (collectively appellants), under the Uniform Fraudulent Transfer Act (UFTA), Neb. Rev. Stat. § 36-701 et. seq. (Reissue 2016). We note that the UFTA has been repealed and replaced by the Uniform Voidable Transactions Act, 2019 Neb. Laws, L.B. 70, but it was in effect at the time this case originated and, therefore, it is applicable to our analysis.

Lincoln Lumber alleged that the Tiemanns fraudulently transferred money to Alycia rather than paying the judgment they owed to Lincoln Lumber. The district court for Lancaster County granted partial summary judgment in favor of Lincoln Lumber and entered judgment against Alycia for $25,000. After a trial on the remaining issues, the court found in favor of Lincoln

- 1 -

Lumber and entered judgment against appellants, jointly and severally, for $27,500. Based on the reasons that follow, we affirm.

BACKGROUND

On September 8, 2011, Lincoln Lumber obtained a judgment in the amount of $125,000 against the Tiemanns in the district court. On August 30, 2013, Lincoln Lumber obtained a "charging order" in the referenced action against all transferable interests of Ruth in the Spence Family Limited Partnership. The charging order constituted a lien on Ruth's transferable interests in the limited partnership.

On April 10, 2014, Ruth received $61,230.24 from the Spence Family Limited Partnership pursuant to her interest in the limited partnership. She also received $36,316.95 on April 23, and $75,233.18 on May 5, for a total of $172,770.37.

Ruth gave Alycia $25,000 on April 10, 2014; $12,500 on April 24, 2014; and $15,000 on May 9, 2014, for a total of $52,500. At the time Alycia received these amounts she knew that the Tiemanns were insolvent.

On July 7, 2014, Lincoln Lumber entered into a stipulation for payments of the judgment, wherein the Tiemanns agreed to pay Lincoln Lumber $65,000 on the date of the agreement and agreed to pay the remaining $67,430.68 by April 7, 2015. The Tiemanns paid the $65,000 on July 7, 2014, but failed to pay the remaining balance by April 7, 2015. No further payments were made after July 7, 2014.

On September 20, 2016, Lincoln Lumber filed the present action against appellants under the UFTA based on the three transfers the Tiemanns made to Alycia. The complaint alleged that the Tiemanns made the transfers to Alycia with the intent to hinder, delay, or defraud their creditors; the Tiemanns were insolvent at the time of each transfer; at the time of each transfer, Alycia did not give reasonably equivalent value for the voluntary transfer of monies from the Tiemanns; and the transfers were voidable pursuant to the UFTA.

Lincoln Lumber and appellants each filed a motion for summary judgment. Following a hearing, the trial court denied appellants' motion for summary judgment and partially granted Lincoln Lumber's summary judgment motion. The trial court found that the terms of the stipulation for payments did not preclude Lincoln Lumber from filing and pursuing its claim under the UFTA after April 7, 2015, as appellants had argued, and that it was undisputed that the first $25,000 of the $52,500 that was transferred to Alycia was transferred for antecedent debts and therefore, was a fraudulent transfer. The court entered judgment against Alycia for $25,000. The court also concluded that there remained a material question of fact as to whether some or all of the remaining $27,500 was fraudulently transferred.

On March 27, 2018, a bench trial was held on the remaining issue--whether Lincoln Lumber could recover $27,500 transferred to Alycia by the Tiemanns in April and May 2014. The only evidence offered by Lincoln Lumber was an exhibit containing a stipulation by the parties. The stipulation included much of the information already discussed in regard to the judgment against the Tiemanns, the money Ruth received from the Spence Family Limited Partnership, the transfers to Alycia, and the stipulation for payments. In addition, the exhibit provided that Alycia did not have a judgment against the Tiemanns; Alycia did not have a perfected lien against any

property owned by the Tiemanns; the Tiemanns were insolvent at the time they transferred the $52,500 to Alycia; Alycia knew that the Tiemanns were insolvent when she received the $52,500; and the Tiemanns lived in a house owned by Alycia. The mortgage payment history and utility payment history for the house the Tiemanns were occupying were attached to the stipulation.

Appellants offered three exhibits into evidence: the mortgage payment history, the utility payment history, and the stipulation for payments. Alycia's husband, Justin Brady, testified at trial as well as the Tiemanns. Justin testified that the Tiemanns had lived in a house he and Alycia owned since the fall 2011. He testified that he and Alycia had a lease agreement with the Tiemanns for $3,000 per month, which was approximately the amount of monthly mortgage and utility payments. No written lease was produced at trial. Justin testified that in April 2014, Justin and Alycia told the Tiemanns they would have to move out of the house because they had not been paying rent. Justin and Alycia planned to then sell the house. Justin testified that the Tiemanns asked if they could continue living in the house if they prepaid him and Alycia for rent. Justin testified that he and Alycia subsequently received money from the Tiemanns and it was used to make seven future mortgage payments. The mortgage payment history reflected that seven mortgage payments were made on April 10, 2014. In exchange for the money received, Justin and Alycia agreed to not sell the house and to allow the Tiemanns to continue living in the house. The Tiemanns both testified that they agreed with the testimony given by Justin.

Appellants moved for directed verdict at the end of Lincoln Lumber's case, which the court overruled. Appellants did not renew their motion at the end of all evidence. Following trial, the court found that the remaining $27,500 that the Tiemanns paid to Alycia was a fraudulent conveyance. The court determined that the transfers made to Alycia were made with actual intent to hinder, delay, or defraud Lincoln Lumber under § 36-705(a)(1). In addition, the court found that the Tiemanns did not receive reasonably equivalent or present value in exchange for the transfer of the $27,500 under § 36-706. It found the $27,500 was transferred either for antecedent debt or for future value yet to be incurred, and was not in the ordinary course of business. Judgment was entered in favor of Lincoln Lumber and against appellants, jointly and severally, in the amount of $27,500.

## ASSIGNMENTS OF ERROR

Restated, appellants assign that the trial court erred in (1) granting Lincoln Lumber's motion for summary judgment in part and denying appellants' motion for summary judgment because the stipulation for payments barred the present action; (2) its interpretation of the stipulation for payments and its terms; (3) finding there was no ambiguity in the stipulation for payments; (4) failing to construe the terms of the stipulation for payments against the drafter; (5) failing to grant a directed verdict at trial; (6) finding at trial that the remaining $27,500 transferred to Alycia amounted to a fraudulent conveyance; (7) finding actual intent to hinder, delay, or defraud Lincoln Lumber; and (8) finding that the Tiemanns did not receive reasonably equivalent or present value in exchange for the transfer of the $27,500.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Sparks v. M&D Trucking*, 301 Neb. 977, 921 N.W.2d 110 (2018). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. *Meyer Natural Foods v. Greater Omaha Packing Co.*, 302 Neb. 509, 925 N.W.2d 39 (2019).

An action under the UFTA is equitable in nature, and an appeal of a district court's determination that transfers of assets were in violation of the UFTA is equitable in nature. *Korth v. Luther*, 304 Neb. 450, 935 N.W.2d 220 (2019). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court, provided, however, that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.* When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions. *Id.*

## ANALYSIS

*Summary Judgment.*

Appellants' first four assignments of error all relate to the court granting partial summary judgment in favor of Lincoln Lumber and denying summary judgment in favor of appellants. On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists. *Estermann v. Bose*, 296 Neb. 228, 892 N.W.2d 857 (2017). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.* Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

The trial court granted partial summary judgment in favor of Lincoln Lumber and denied appellants' motion based on its determination that the language in the stipulation for payments was clear and unambiguous and did not preclude Lincoln Lumber from pursuing a UFTA claim after the April 7, 2015, deadline had passed. Appellants disagree and argue that the plain language of the stipulation for payments prohibits Lincoln Lumber from ever bringing a UFTA action against Alycia for transfers which predate the stipulation.

The interpretation of a contract is a question of law. *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017). In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *McEwen v. Nebraska State College Sys.*, 27 Neb. App. 896, 936 N.W.2d 786 (2019). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.* When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Id.* The fact that the parties have suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Id.*

Paragraph 3 of the stipulation for payments states that appellants agree to pay Lincoln Lumber a down payment of $65,000 on the date of the agreement and the remaining $67,430.68 by April 7, 2015. Paragraph 4 of the stipulation for payments states:

In return for the initial payment of $65,000, [Lincoln Lumber] agrees that it will refrain from any collection or execution efforts pertaining to or concerning any fraudulent transfers between [the Tiemanns] and their daughter made prior to execution of this stipulation. Notwithstanding, [Lincoln Lumber] retains the right to pursue any fraudulent transfer, as defined in the [UFTA], and [the Tiemanns] are on notice that they may not transfer, gift, or assign any money, property or other assets to their daughter or any other party until the judgment balance is paid in full.

Appellants contend that based on the stipulation for payments, Lincoln Lumber agreed not to bring this action. Appellants argue that the stipulation for payments constitutes a release or waiver by Lincoln Lumber of any UFTA cause of action against Alycia based on transfers made by the Tiemanns before the stipulation of payments was implemented. It contends that the terms of the stipulation are clear that Lincoln Lumber agreed to forgo any collection attempts against Alycia for fraudulent transfers.

The court however concluded that the use of the word "refrain" in paragraph 4 was used in the sense of something being held back, but not a right given up entirely. It also stated that the term "refrain" operated as a forbearance, and not a release. The court further found:

At the time the parties entered into the Stipulation, [Lincoln Lumber] had a right to file and pursue a UFTA action against [the Tiemanns] and their daughter. By the unambiguous language of the Agreement, [Lincoln Lumber] agreed to refrain from enforcing its right to do so, and gave [the Tiemanns] time to pay the remaining balance of the judgment pursuant to the terms of Paragraph 3. The Stipulation was intended to operate for one year.

Appellants argue that the court's interpretation of the terms of the stipulation for payments ignores other language in the document, specifically, language in paragraph 5 which states that if the balance is not paid by April 7, 2015, Lincoln Lumber may execute on said judgment against the Tiemanns. Appellants argue that paragraph 5 provides the only remedy for Lincoln Lumber if the balance was not paid by the deadline. They contend that the stipulation for payments does not

mention or contemplate Lincoln Lumber having the ability to go after alleged prior fraudulent transfers if the balance was not paid. We disagree.

Based on the language in the stipulation, Lincoln Lumber agreed that in exchange for an immediate payment of $65,000, it would refrain from its right to execute on the judgment, including filing a UFTA action against appellants, and give the Tiemanns until April 7, 2015, to pay the remaining balance of the judgment. Specifically, in paragraph 4, Lincoln Lumber agreed not to pursue any collection or execution efforts pertaining to any prior fraudulent transfers between the Tiemanns and Alycia. The stipulation does not contain any language which indicates Lincoln Lumber's intent to permanently release or waive its claims under the UFTA, as appellants contend. The second sentence of paragraph 4 further states, "Notwithstanding, [Lincoln Lumber] retains the right to pursue *any* fraudulent transfer, as defined in the [UFTA]. . . ." (Emphasis supplied.) "[A]ny fraudulent transfer" would include those transfers at issue which were made prior to the execution of the stipulation for payments. Therefore, if the Tiemanns did not pay the balance by April 7, 2015, Lincoln Lumber could pursue any fraudulent transfers between the Tiemanns and Alycia at that time, including those before the stipulation for payments. When read in conjunction with paragraph 5, after April 7, 2015, Lincoln Lumber could pursue a UFTA cause of action or execute on the balance of the judgment against the Tiemanns. We agree with the trial court that the language in the stipulation for payments is clear and unambiguous and did not bar the UFTA claim.

Appellants next argue, in the alternative, that the trial court erred in granting partial summary judgment because the language in the stipulation for payments is ambiguous, necessitating factual determinations. Appellants are essentially arguing that if we do not agree with their argument that the plain and ordinary meaning of the agreement precludes Lincoln Lumber's UFTA claim, then we should conclude that the stipulation is ambiguous and must be construed against Lincoln Lumber because it drafted the document. See *Beveridge v. Savage*, 285 Neb. 991, 830 N.W.2d 482 (2013) (ambiguous contracts are construed against drafter).

Because we have determined that the stipulation for payments is clear and unambiguous and does not bar Lincoln Lumber's UFTA claim, we need not further address appellants' claim that the stipulation for payments is ambiguous.

*Trial.*

Appellants next assign that the trial court erred in failing to direct a verdict against Lincoln Lumber at trial. At the close of Lincoln Lumber's evidence, appellants moved for a directed verdict, but did not renew the motion after they rested. The trial court overruled the motion and appellants proceeded to offer evidence. It is well established that a defendant who moves for a directed verdict at the close of the plaintiff's evidence and, upon the overruling of such motion, proceeds with trial and introduces evidence, waives any error in the ruling on the motion. See *Denali Real Estate v. Denali Custom Builders*, 302 Neb. 984, 962 N.W.2d 610 (2019). Therefore, we do not consider this assignment of error further.

Appellants also assign the trial court erred in finding at trial that the two transfers to Alycia in April and May 2014 totaling $27,500 were fraudulent as they were made with actual intent to hinder, delay, or defraud Lincoln Lumber. The trial court determined at the summary judgment

- 6 -

phase that there was no genuine issue of material fact in regard to whether the first $25,000 of the total $52,500 transferred to Alycia was a fraudulent transfer. The court found that the transfer was for an antecedent debt in violation of § 36-706(b). Appellants do not challenge this finding. At trial, the court determined that the remaining $27,500 was fraudulently transferred, based on a finding that the transfers were made with actual intent to hinder, delay, or defraud Lincoln Lumber in violation of § 36-705(a)(1).

The question of whether a transfer of property was made with intent to defraud creditors is a question of fact. *First State Bank of Scottsbluff v. Bear*, 172 Neb. 504, 110 N.W.2d 83 (1961). Conveyances between close relatives, as in this case, are presumptively fraudulent as to an existing creditor, and in litigation between the creditor and the parties to the conveyance over its alleged invalidity, the burden is on the debtors and grantees to establish the good faith of the transaction by a preponderance of the evidence. *Riggs* v. *Hroch*, 133 Neb. 260, 274 N.W. 598 (1937). Moreover, a conveyance between relatives which has the effect of hindering or delaying a creditor in the collection of his claim is presumptively fraudulent and, in litigation between the creditor and the parties to the conveyance over its alleged invalidity, the burden is on the parties to the conveyance to establish the good faith of the transaction. *Filley* v. *Mancuso*, 146 Neb. 493, 20 N.W.2d 318 (1945).

The court found that the $27,500 in question at trial was fraudulently transferred to Alycia in violation of § 36-705(a)(1). The statute, which applies to present and future creditors, states:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor;

. . . .

(b) In determining actual intent under subdivision (a)(1) of this section, consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

The trial court found that seven of the eleven factors existed and accordingly, the evidence showed that the transfers to Alycia were made with actual intent to hinder, delay, or defraud Lincoln Lumber pursuant to § 36-705(a)(1). Specifically, the court found that the first, third, fourth, fifth, seventh, ninth, and tenth factors were met.

Appellants argue that the court was incorrect in regard to several of these findings. They first argue that the court erred in finding the third factor existed--the transfer or obligation was disclosed or concealed. The court noted that Lincoln Lumber obtained a charging order on August 30, 2013, against all transferrable interests of Ruth in the Spence Family Limited Partnership, which constituted a lien. In April and May 2014, Ruth received $172,780.37 pursuant to her interests in the Spence Family Limited Partnership. Rather than using the proceeds to satisfy the charging order, she transferred $52,500 of that money to Alycia. Neither the money Ruth received nor the transfer to Alycia was disclosed to Lincoln Lumber.

Appellants argue that the Tiemanns had no knowledge of the charging order, and there was no evidence that it created an additional duty of disclosure on their part. James testified that he did not try to conceal the transfers to Alycia, and he did not know he had an obligation to disclose the transfers to Lincoln Lumber or to anyone at the time they were made. James also testified that when he and Ruth transferred funds to Alycia, he was not aware that the charging order existed. However, the evidence shows that Lincoln Lumber filed an application for charging order on August 5, 2013, and a hearing date was set for August 30. The application contains a certificate of service which states that a copy of the application for charging order was sent to Ruth. The charging order itself also indicates that the Tiemanns were represented by counsel at the time of the hearing. In addition, the timing of the transfers from Ruth to Alycia indicate a desire to conceal a portion of the funds transferred from the partnership to Ruth. Ruth received funds from the partnership on April 10, April 24, and May 5, 2014; Ruth transferred funds to Alycia on April 10, April 24, and May 9, 2014.

Appellants next argue that the court erred in finding that the $27,500 transferred to Alycia was substantially all of the Tiemanns' assets, the fifth factor. Appellants argue this cannot be true because a few months after the transfer to Alycia, the Tiemanns made a $65,000 payment to Lincoln Lumber pursuant to the stipulation for payments. The court found this factor was met because the parties had stipulated that the Tiemanns were insolvent at the time of the transfer. Appellants contend that the court incorrectly found that if the Tiemanns were insolvent, then the transfer to Alycia must have been all of their assets. However, the parties stipulated that the Tiemanns were insolvent at the time of the transfers to Alycia. Pursuant to § 36-703(a), a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets as a fair valuation. Based on this definition, we do not conclude that the trial court was wrong in finding that the fifth factor was met.

Appellants also question the court's finding that the Tiemanns were insolvent at the time of the transfers to Alycia based on the court's reasoning for the fifth factor. However, as previously

stated, the parties stipulated to the Tiemanns' insolvency and we see no reason to address it further here.

With regard to the seventh factor, the court found that the Tiemanns removed or concealed assets because they did not notify Lincoln Lumber of the funds Ruth received from the partnership. Appellants again argue that there is no evidence that the Tiemanns knew of the charging order. As previously stated, James testified that he and Ruth were unaware of the charging order, but the application for charging order and the charging order itself, indicate otherwise.

Appellants next take issue with the court's finding that the tenth factor was met, that is, the transfers occurred shortly before or shortly after a substantial debt was incurred. Appellants contend there was no evidence of a debt incurred around the time of the transfers. They point out that Lincoln Lumber obtained the judgment against the Tiemanns in September 2011 and the stipulation for payments pursuant to that judgment was entered in July 2014. Appellants therefore argue that the stipulation for payments was not a new debt, but rather was based on the judgment from three years earlier. We agree that the stipulation was not a new debt incurred around the time of the transfer. However, when Ruth received money from the Spence Family Limited Partnership in April and May 2014, she was immediately obligated to pay that money to Lincoln Lumber under the charging order. This was in essence a "new" debt related to the previous judgment. Rather than pay the money Ruth received from the Spence Family Limited Partnership to Lincoln Lumber, the Tiemanns transferred $52,500 of it to Alycia. Thus, they transferred the money shortly after the time a new debt obligation arose.

After considering the factors under § 36-705(b), the trial court concluded that because the Tiemanns transferred $52,500 to their daughter Alycia knowing that as a result of the transfer they could not pay the judgment owed to Lincoln Lumber, and then entered into a stipulation for payments further delaying payment until April 7, 2015, the only finding supported by the evidence was that the Tiemanns transferred the funds to Alycia with actual intent to hinder or delay payments to Lincoln Lumber in violation of § 36-705(a)(1). We agree with the conclusion of the trial court. That is, the evidence supports a finding that the transfers to Alycia were made with actual intent to hinder, delay, or defraud Lincoln Lumber under § 36-705(a)(1), and were fraudulent transfers.

Finally, appellants assign that the trial court erred in finding there was no fair, reasonable, and current consideration for the $27,500 transferred to Alycia. In addition to finding that the transfer to Alycia was fraudulent pursuant to § 36-705(a)(1), the trial court found that the transfers were fraudulent pursuant to § 36-706(a). Specifically, the court found that the Tiemanns did not receive a reasonably equivalent value in exchange for the transfer of the $27,500. However, having found that the transfers were fraudulent based on § 36-705(a)(1), we need not address whether the transfers were fraudulent under § 36-706(a). See *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

CONCLUSION

We conclude that the trial court did not err in granting partial summary judgment in favor of Lincoln Lumber, denying appellants' motion for summary judgment, and entering judgment

against Alycia for $25,000. We further conclude that the trial court did not err in finding that the remaining $27,500 in transfers to Alycia were fraudulent and in entering judgment against appellants, jointly and severally, for $27,500. Accordingly, the trial court's orders are affirmed.

AFFIRMED.