IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

HARRIS V. SNOWDEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DONALD HARRIS, APPELLEE,

V.

BERNARD T. SNOWDEN III, APPELLANT.

Filed December 9, 2025.    No. A-25-135.

Appeal from the District Court for Douglas County: JOHN E. HUBER, Judge. Appeal dismissed.

Bernard T. Snowden III, pro se.

Donald A. Harris, pro se.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

Bernard T. Snowden III appeals from an order of the Douglas County District Court granting Donald Harris (Donald) a harassment protection order against him. We find that the protection order has, by its terms, expired and become moot, and therefore dismiss the appeal.

## BACKGROUND

On February 15, 2024, a form petition and affidavit to obtain a harassment protection order was filed pursuant to Neb. Rev. Stat. § 28-311.09 (Cum. Supp. 2024). We note that § 28-311.09 has since been repealed by 2025 Neb. Laws, L.B. 80, § 52. There is now a Protection Orders Act, Neb. Rev. Stat. § 26-101 et seq. (Supp. 2025), which became effective on September 3, 2025. Since the Protection Orders Act was not yet in effect when the protection order was entered in this case, we will rely upon the statutory scheme in effect at the time.

- 1 -

In the caption of the petition and affidavit, Donald and his daughter, Ahnjel Harris (Ahnjel), were named as the "Petitioner[s]" and Snowden was named as the "Respondent"; Ahnjel's four children (Donald's grandchildren) were named in the caption as "Additional Petitioner/Minor Child(ren)." In the first paragraph of the body of the petition, where it states, "I, ____, am the petitioner in this case," Ahnjel's name was handwritten on the line. However, the "Signature of Petitioner" at the end of the petition and affidavit was Donald's. The box was marked to note that the petitioners had been harassed. Nebraska addresses were given for the petitioner(s) and the respondent.

The form petition asked for past or current court cases involving the petitioner and respondent. Six case numbers were listed, three of which were prefaced by "P.O." One of the "P.O." cases was "denied," and another one was "dism on 2-15-24."

In the section of the petition and affidavit asking for "[t]he dates or approximate dates and facts of the most recent series of acts and the most severe incident or incident(s) of harassment towards the person(s) seeking protection," the following was written:

A. Date/Time: 5/27/23 apx 11:50 am Description: Respondent arrived at residence disturbing the peace, causing a public disturbance. He remained in front of the residence in his vehicle until police arrived to have him leave the area. Several weeks prior to this incident he confronted me and the children at a local store, creating a public disturbance [unreadable] physically assaulted the minor children. A police report was filed.

B. Date/Time: [blank] Description: The respondent arrives unannounced and uninvited to menace threaten and harass.

C. Date/Time: 2/15/24 apx 8:37 Description: Judge dismissed case due to father stepping out to ensure that I did not receive a ticket. The judge said that because father was not present at the moment the case was dismissed. Immediately after the respondent began his harassment tactics confronting my father in the presence of the police officers.

Additionally, letters to the judge were attached to the petition and affidavit. One letter, dated February 14, 2024, was not signed, but based on the content of the letter appears to have been written by Ahnjel. Some of the various allegations in the letter include: Snowden "is bitter angry malicious and obsessed because I had the strength to pack up and leave his physical and mental abuse," "[t]he abuse that not only he caused me but the abuse that he inflicted on my sons that has taking [sic] years to heal from"; "since this restraining order has been in place I have seen [Snowden] several times driving up and down my street and shortly after seeing him the police would arrive at my door for a welfare check"; "[m]y voice mailbox is full right now . . . with voicemails from [Snowden]"; "I have been attacked by [Snowden] numerous times"; "[Snowden] has not only attacked me and threatened my life and the lives of my father sons and brother but he has also formed a campaign to try and stop justice from being served by evading service"; Snowden "attempt[ed] to kidnap the children at [a store] last year and I do have a police report number"; and "[h]e's constantly going up and down my street and having people follow and come knock on my door."

Another letter, dated February 15, 2024, was written by Donald. Some of the various allegations in the letter include: Snowden "has consistently manipulated the legal system to evade accountability for his actions," "has falsely claimed residency in both Georgia and Nebraska, filing

baseless charges and allegations against [Ahnjel] in multiple jurisdictions"; Snowden "has personally threatened me on several occasions and has shown up at my residence with a handgun, as captured by security video evidence"; "His threats towards me and his menacing behavior further highlight his volatile and dangerous nature, and underscore the need for continued legal protection for [Ahnjel] and her children"; and "we are all fearful not knowing where [Snowden] is at any given time, as he has been known to show up sometimes on foot."

The district court entered an ex parte harassment protection order against Snowden and in favor of Donald, Ahnjel, and the four children on February 15, 2024. This order was to remain in effect for 1 year. The court determined that it reasonably appeared from the specific facts included in the affidavit that irreparable harm, loss, or damage would result before the matter could be heard on notice. The court ordered that Snowden was (1) enjoined from imposing any restraint upon the person or liberty of the protected parties; (2) enjoined from harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the protected parties; and (3) enjoined from telephoning, contacting, or otherwise communicating with the protected parties.

On December 19, 2024, Snowden requested a hearing on the protection order; his given address was in Georgia.

A hearing on the protection order was held on January 16, 2025. Snowden and Donald appeared without counsel. The district court noted, "It looks like they had a bunch of attempts to serve [Snowden], and they never got him service," "[a]nd, now, we're served finally." Donald agreed with the court's statement and said Snowden had been "evading service." Snowden questioned whether he needed "to be served within six months of the initial situation," and asked, "[I]sn't there a six month statute?" The court responded, "All I know is you've been served." (We note that there is nothing in our appellate record to show when Snowden was served.)

The district court asked what brought Donald to seek assistance "back when you did." Donald responded that "prior to us filing this," Snowden "assaulted us . . . in the lobby . . . of the courthouse" and "that's why they granted this." "I wanted to file this and try to protect my grandsons and my daughter." The court asked Donald what threats Snowden made against them. Donald replied, "[I]t's been ongoing since before they got to Nebraska." "I brought them to Nebraska because he . . . choked . . . my oldest grandson," "put the other one -- he put them in the trash can -- put them in a dumpster," "[a]nd he basically brought that same behavior here and threatened me." Donald stated that Snowden "came to my house with -- with a handgun" in 2019, "shortly after he followed them here"; Snowden "stalked them," "found out where they were," and "he's been haunting us ever since."

The district court gave Snowden an opportunity to respond. Snowden stated,

> I have no idea what he's talking about. I did come here to see my children. I have two children, 6 and 5 right now. I have 50-50 legal and physical custody of them. And, right now, their mother is being held . . . in contempt. She's already been held once under contempt, and right now just waiting for another court date.

He also stated his "custody is in Georgia." According to Snowden, "[W]e actually had a protection order here with you," "it was at that time I had got assaulted, and the mother had been arrested for assault" and "we both had filed one at the time, so you heard both of ours"; "You said we should get counseling and all these things, and dismissed both [contempt actions]" and "[f]rom that time

- 3 -

until now, I haven't seen my children." The court informed Snowden that he had to "file an appropriate action to be able to enforce those [custody or visitation] rights here" and it had "no jurisdiction over any of those issues."

The district court informed the parties that they were there for purposes of a protection order only, and that for the court to continue the protection order, it needed Donald to specifically state what Snowden had done to the petitioners. Donald stated, "He continuously filed false charges" "against my daughter," "[h]e made false allegations with DCFS, with child protective services" and "[t]hey were all found unfounded." The court asked to see the findings that Donald said he had with him; the court noted that though"this says unfounded," it "[d]oesn't mean that he told a lie." (Any document reviewed by the district court was not offered or received into evidence and is not included in our appellate record.)

The district court stated, "I'm going to grant the order as it relates to you, [Donald]," but "not as it relates to everybody else." The following colloquy was then had on the record.

> MR. SNOWDEN: What was the basis on it being granted?
>
> THE COURT: That you've assaulted the gentleman.
>
> MR. SNOWDEN: I've never -- I've never seen -- even if I assaulted him, there was no --
>
> THE COURT: That's my finding. You're welcome to file an appeal if you choose to do so. All right?
>
> MR. SNOWDEN: Can I ask one more question?
>
> THE COURT: Certainly.
>
> MR. SNOWDEN: So, if it was -- the paperwork was filed last February. Is the protection order for -- for until February?
>
> THE COURT: Right. It's going to go until -- for one year. Correct.
>
> MR. SNOWDEN:  So it's -- oh. So it's starting from now.
>
> THE COURT: Starting today.
>
> MR. SNOWDEN: Okay.
>
> THE COURT: For one year. Yeah.

The hearing was then concluded.

That same day, January 16, 2025, the district court entered a written "Harassment Protection Order (After Hearing, Ex Parte Order Issued)." Donald was the only "protected party" of the court's January 16 order. The court ordered that "the harassment protection order issued on February 15, 2024, . . . shall remain in effect for a period of one year from the date of the original order." Snowden's subsequent motion for new hearing was denied.

Snowden filed his notice of appeal on February 18, 2025.

ASSIGNMENTS OF ERROR

Snowden assigns that the district court erred when it (1) did not validate claims made by Donald, (2) awarded a protection order to Donald, and (3) demonstrated personal bias and prejudice against him.

STANDARD OF REVIEW

Mootness does not prevent appellate jurisdiction. *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018). But, because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, appellate courts have reviewed mootness determinations under the same standard of review as other jurisdictional questions. See *id.* When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts. *Id.*

ANALYSIS

Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction. *Courtney v. Jimenez*, 25 Neb. App. 75, 903 N.W.2d 41 (2017). While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power. *Id.* Thus, we must first determine whether the expiration of the protection order, which expired by its own terms on February 15, 2025, has rendered this appeal moot.

The ex parte harassment protection order entered on February 15, 2024, stated that it would remain in effect for 1 year. At the January 16, 2025, hearing, Snowden noted that "the paperwork was filed last February [2024]," and asked if the protection order was "for until February?" The district court responded, "Right," "[i]t's going to go until -- for one year." Upon further inquiry, the court mistakenly stated the order would go 1 year "from today." However, in its subsequent written order filed the same day, the court stated that "the harassment protection order issued on February 15, 2024, . . . shall remain in effect for a period of one year from the date of the original order."

Regardless of the district court's mistaken oral statement regarding the duration of the protection order, its written order controls. See, Neb. Rev. Stat. § 25-1301 (Cum. Supp. 2024) (rendition of judgment is act of court in signing single written document stating all relief granted or denied in action); *Tri-County Landfill v. Board of Cty. Comrs.*, 247 Neb. 350, 526 N.W.2d 668 (1995) (mere oral pronouncement of judgment without entry on trial docket is not rendition of judgment or final order). Therefore, as stated in the court's written order, the harassment protection order expired on February 15, 2025.

A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Weatherly v. Cochran, supra*. Usually, in the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory. *Id.* Therefore, as a general rule, a moot case is subject to summary dismissal. *Id.*

Because the protection order in this case has expired, the instant appeal is moot. However, under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination. *Courtney v. Jimenez, supra*. See, also, *Hron v. Donlan,* 259 Neb. 259, 609 N.W.2d 379 (2000). The public interest exception to the rule precluding consideration of issues on appeal due to mootness requires a consideration of the public

or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. *Id.*

Here, whether the protection order against Snowden was supported by sufficient evidence is of a private nature, it does not demand an authoritative adjudication for future guidance of public officials, and because of the unique facts of this case, the same or a similar problem is not likely to recur. We find no exception to the mootness doctrine under which we can address sufficiency of the evidence.

Although his appeal of the protection order is moot, we nevertheless observe that Snowden claims that the district court judge "demonstrated deep seated antagonism" towards him, "call[ing] into question his judicial impartiality." Brief for appellant at 9. Regardless of mootness, we note that Snowden's claim is not supported by the record because the statements he attributes to the district court do not appear in our appellate record.

CONCLUSION

Because we have concluded that this appeal is moot and that no exceptions to the mootness doctrine apply, the appeal is dismissed.

APPEAL DISMISSED.